AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
3291 SOUTHSIDE ROAD, FRANKFORT, NY (DESCRIBED )  Case No. 5:24-MJ-368 (MJK)
IN ATT. A-1); PERSON OF MICHAEL AUSTIN (DESCRIBED )
IN ATT. A-2); AND DEVICE USING 315-601-8949 )
(DESCRIBED IN ATT. A-3) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3.

located in the _____Northern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of firearm by prohibited person |
| 21 U.S.C. § 841(a)(1) | Distribution and possession with intent to distribute controlled substance |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Richard Gardinier 5999*
_____
*Applicant's  signature*

Richard Gardinier, Special Agent, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:  8/13/2024
_____

*Judge's signature*

City and state:  Syracuse, NY          Hon. Mitchell J. Katz, U.S. Magistrate Judge
_____
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (A) 3291 SOUTHSIDE ROAD, FRANKFORT, NEW YORK 13340, (B) THE PERSON OF MICHAEL AUSTIN AND (C) THE ELECTRONIC DEVICE UTILIZING THE TELEPHONE NUMBER 315-601-8949 | Case No. 5:24-MJ-368 (MJK) <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Richard Gardinier, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for:

   a.  the address of 3291 Southside Road, Frankfort, Oneida County, New York 13340 described further in Attachment A-1 (the **Subject Residence**);

   b.  the person of Michael **AUSTIN** described further in Attachment A-2; and

   c.  the electronic device utilizing mobile number 315-601-8949 described further in Attachment A-3 (**Subject Device**)

for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon) and Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances) (collectively, the **Subject Offenses**), as described further in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2, 2017.  I have attended the Federal Law Enforcement Training Center (FLETC), located in Glynco, Georgia, where in I was enrolled in, and successfully completed, both Criminal Investigator Training Program (CITP) and Special Agent Basic Training (SABT). During the course of my training, I received instruction on physical

surveillance, interviewing sources of information and defendants, reviewing telephone and financial records, applying for and serving search warrants, firearms trafficking, etc.

3.     Prior to my time with ATF, I was employed by the United States Secret Service, Uniformed Division (USSS/UD) for four years.  I was enrolled in and successfully completed the Uniformed Police Training Program (UPTP) at FLETC, as well as New Officer Training with the USSS/UD, located in Beltsville, Maryland.

4.      I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for the offenses enumerated in Title 18, 21 and 26, United States Code.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts set forth in this affidavit, I believe there is probable cause that violations of  Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon) and Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances) are located in the **Subject Residence**, the person of Michael **AUSTIN** and on the **Subject Device**.

**FACTS SUPPORTING PROBABLE CAUSE**

7.     As described in more detail below, between May 2024 and July 2024, law enforcement conducted controlled purchases of controlled substances, namely cocaine, as well as firearms from Michael **AUSTIN**. During 6 controlled purchases, **AUSTIN** sold a cooperating

source 2 firearms, as well as a quantity of a white powdery substances which field-tested positive for cocaine.

### A.       AUSTIN Sells Cocaine (Week of June 23, 2024)

8.       During the week of June 23, 2024, at ATF's direction, CS1[1] made a controlled purchase of cocaine from AUSTIN. This transaction was coordinated through the phone number 315-601-8949 (TARGET NUMBER), which is believed to be operating on the **Subject Device**. Based on my participation in the purchase and discussions with and CS1, I have learned, in substance and in part, the following:

a.       In a series of written messages with the Target Number, CS1 coordinated the purchase of cocaine by communicating with the Target Number (used by the **Subject Device**). The user of the **Subject Device** agreed to make the sale to CS1, and instructed CS1 to go to the **Subject Residence** to complete the transaction. These messages were preserved and were observed by law enforcement.

b.       Before the agreed-upon time to conduct the transaction, law enforcement met with CS1 at a separate location. CS1 was provided with funds for the transaction, and CS1 was outfitted with a recording and transmitting device to capture the transaction in audio format. CS1 was searched for contraband and money. None was found. The recording device was activated before CS1 drove to the transaction location.

c.       CS1 drove to 3291 Southside Road, Frankfort, New York 13340  (the **Subject Residence**), which was the agreed-upon transaction location. Members of law

---

[1] CS1 has been working with ATF for several years. S/he has proven reliable over the course of more than 5 investigations, leading to more than 5 federal arrests. CS1 has no pending charges and is working for monetary compensation. CS1 has a prior felony conviction.

enforcement maintained physical surveillance of CS1's vehicle throughout the entire transaction. At the **Subject Residence**, CS1 met an individual (whose identity was later confirmed as **AUSTIN** as described below).

d.      Surveillance units in the area observed CS1 enter the **Subject Residence**, wherein, according to CS1, and the recordings, which were subsequently reviewed by law enforcement, CS1 gave **AUSTIN** the agreed-upon payment for the cocaine. **AUSTIN**, in exchange, provided CS1 with an amount of a white powdery substance which later field-tested positive for cocaine. The individual was identified as **AUSTIN** as follows: (1) law enforcement officers performing surveillance of the transaction recognized **AUSTIN** from prior personal interactions; (2) after the transaction, CS1 was shown a photograph of **AUSTIN** and recognized him as the individual who had just sold him the cocaine; and (3) **AUSTIN** was surveilled leaving the **Subject Residence** via stationary covert camera on several occasions throughout the investigation, and based on my viewing known booking photographs of AUSTIN, I recognized him as the individual on those videos.

e.      After the transaction, CS1 returned to the designated meeting location with law enforcement, while under surveillance. CS1 gave law enforcement the clear plastic baggies containing a white powdery substance which later field-tested positive for cocaine. Law enforcement collected the substance and again searched CS1 for contraband and money, with negative results.

**B.      AUSTIN Sells Cocaine (Week of July 14, 2024)**

9.      During the week of July 14, 2024 at ATF's direction, CS1 made a controlled purchase of cocaine from AUSTIN, which was coordinated through communications with the TARGET NUMBER, which is believed to be operating on the **Subject Device**. Based on my

participation in the purchase and discussions with CS1, I have learned, in substance and in part, the following:

  a. In a series of messages with the Target Number, CS1 coordinated the purchase of the cocaine from **AUSTIN**. **AUSTIN** agreed to make the sale. These messages were recorded and observed by law enforcement.

  b. Before the agreed-upon time to conduct the transaction, law enforcement met with CS1 at a separate location. CS1 was provided with funds for the transaction and was outfitted with a recording and transmitting device to capture the transaction in audio format. CS1 and his/her vehicle were searched for contraband and money, none was found. The recording device was activated before CS1 traveled to the transaction location.

  c. CS1 drove to the **Subject Address**, where, as confirmed by physical surveillance, covert cameras, and CS1's later debrief, CS1 met with **AUSTIN**. CS1, as confirmed by the recording and debrief of CS1 afterwards, entered the **Subject Residence** and met with **AUSTIN.  AUSTIN** provided CS1 with the amount of cocaine and CS1 provided **AUSTIN** with an amount of pre-recorded, government funds as payment. The transaction took place inside the **Subject Residence.**

  d. After the transaction, CS1 returned to the designated meeting location with law enforcement, while under surveillance. CS1 gave law enforcement the clear plastic baggies containing a white powdery substance which later field-tested positive for cocaine. Law enforcement collected the substance and again searched CS1 for contraband and money, with negative results.

**C.    AUSTIN Sells Two Pistols (Week of July 21, 2024)**

10.    During the week of July 21, 2024 at ATF's direction, CSI made a controlled purchase of two pistols from **AUSTIN**. Based on my participation in the purchase and discussions with CS1, I have learned, in substance and in part, the following:

a.    In a series of messages with the Target Number, CS1 coordinated the purchase of the pistols from **AUSTIN**. **AUSTIN** agreed to make the sale. These messages were recorded and observed by law enforcement.

b.    Before the agreed-upon time to conduct the transaction, law enforcement met with CS1 at a separate location. CS1 was provided with funds for the transaction and was outfitted with a recording and transmitting device to capture the transaction in audio format. CS1 and their vehicle were searched for contraband and money, none was found. The recording device wase activated before CS1 traveled to the transaction location.

c.    CS1 drove to the **Subject Residence** and, as confirmed by the recording and debrief of CS1 afterwards, met with **AUSTIN** inside the **Subject Residence**. **AUSTIN** provided CS1 with two pistols and CS1 provided **AUSTIN** with an amount of pre-recorded, government funds as payment. The transaction took place inside the **Subject Residence.**

11.    After the transaction, CS1 returned to the designated meeting location with law enforcement, while under surveillance. CS1 gave law enforcement the pistols which **AUSTIN** had sold to CS1. I examined them, and observed that they were described as follows;

a.    A Remington, model R51, 9mm caliber pistol bearing serial number 0031022R51; and

b.    A Taurus, model PT 111 G2, 9mm caliber pistol bearing serial number TKN82657.

12.    Based on my training and experience, including specialized training in determining the origin of firearms' manufacture locations, I determined that the pistols were not manufactured

in the state of New York and therefore has traveled in and/or affected interstate and/or foreign commerce.

13.     Your affiant conducted a review of **AUSTIN's** criminal history which revealed two previous felony convictions. One of those convictions was for Conspiracy to Possess/Distribute Cocaine HCL, in the U.S. District Court for the Northern District of New York (case number 5:08-CR-671). **AUSTIN** was sentenced to 67 months' imprisonment, followed by a period of 48 months' supervised release.

## AUSTIN'S USE OF CELLULAR DEVICES

14.     According to CS1, during each of the controlled buys described above, CS1 observed **AUSTIN** carrying at least one cellular device.

15.     Based on my training and experience, and knowledge of the investigation, I know that individuals involved in illegal activity, such as controlled substance or firearms trafficking, often use more than one mobile device to commit their offenses. I also know that individuals involved in controlled substance or firearms trafficking frequently keep their devices on their person (for example, in a pocket or in a bag carried on their person) for the purpose of being available and communicating with potential customers and sources of supply. Such individuals believe that using multiple devices may make it more difficult for law enforcement to detect their illicit activities. I also know that such individuals use device applications to store and transfer proceeds of the offense.

16.     Therefore, there is probable cause to believe that both the **Subject Device** and other mobile devices used by AUSTIN contain evidence of the Subject Offenses. The proposed warrant would permit the seizure and search of mobile devices other than the **Subject Device**, if found on AUSTIN's person or in the **Subject Residence**.

## **TECHNICAL TERMS**

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four

numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer

attached to the Internet computer must be assigned an IP address so that Internet traffic sent from

and directed to that computer may be directed properly from its source to its destination.  Most

Internet service providers control a range of IP addresses.  Some computers have static—that is,

long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP

addresses.

> f.      Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet, connections

between devices on the Internet often cross state and international borders, even when the devices

communicating with each other are in the same state.

18.     Based on my training, experience, and research, I know several phone models

capabilities which allow them to serve as a wireless telephone, digital camera, GPS navigation

device, and PDA. In my training and experience, examining data stored on devices of this type can

uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can sometimes

be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject**

**Device** was used, the purpose of its use, who used it, and when.  There is probable cause to believe

that this forensic electronic evidence might be on the **Subject Device** because:

      a.      Data on the storage medium can provide evidence of a file that was once on

the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as

a paragraph that has been deleted from a word processing file).

      b.      Forensic evidence on a device can also indicate who has used or controlled

the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy"

while executing a search warrant at a residence.

      c.      A person with appropriate familiarity with how an electronic device works

may, after examining this forensic evidence in its proper context, be able to draw conclusions about

how electronic devices were used, the purpose of their use, who used them, and when.

      d.      The process of identifying the exact electronically stored information on a

storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic

evidence is not always data that can be merely reviewed by a review team and passed along to

investigators.  Whether data stored on a computer is evidence may depend on other information

stored on the computer and the application of knowledge about how a computer behaves.

Therefore, contextual information necessary to understand other evidence also falls within the

scope of the warrant.

      e.      Further, in finding evidence of how a device was used, the purpose of its

use, who used it, and when, sometimes it is necessary to establish that a particular thing is not

present on a storage medium.

21.    *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

22.     Based on the foregoing, I respectfully submit that there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon) and Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances) were committed, and evidence, instrumentalities, fruits, and contraband, as described in Attachment B, will be found in the **Subject Residence** (described in Attachment A-1), on the person of **AUSTIN** (described in Attachment A-2); and on the **Subject Device** (described in Attachment A-3).

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.


*Richard Gardinier 5999*
Richard Gardinier
Special Agent
ATF


I, the Honorable Mitchell J. Katz, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on August __13__, 2024 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.


Hon. Mitchell J. Katz
U.S. Magistrate Judge


12

## ATTACHMENT A-1

### Property to be Searched

The property to be searched is located at 3291 Southside Road, Frankfort, New York, 13340, Oneida County, in the Northern District of New York, and includes any outbuildings, such as detached or shared storage areas.  The structure is a split-level style residence with grey siding, a brick foundation and dark colored shutters.  There is a driveway to the east of the building and leading to a door next to the garage.  There is an attached garage to the east facing Southside Road. The numbers "3291" are displayed on the front of the residence near the garage.



## ATTACHMENT A-2

### Person to be Searched

The person to be searched is Michael AUSTIN, a white male with a date of birth of November 17, 1978. AUSTIN is approximately five feet eleven inches tall, weighs approximately 225 pounds, has blue eyes and brown hair. His photo is below.



## ATTACHMENT A-3

### Property to be Searched

The **Subject Device** to be searched is the cellular device assigned telephone number 315-601-8949.

**ATTACHMENT B**

**Items to be Seized**

1.          All records relating to violations of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a previously convicted felon) and Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute controlled substances) involving **MICHAEL AUSTIN** which began no later than May 2024, including:

a.  Any firearms and/or firearms parts and accessories, ammunition or any packaging and receipts for such items;

b.  Any tools, machines, drills, lathes, jigs or other devices that can be used to manufacture, fabricate, assemble, or modify firearms and/or firearms parts.

c.  Records and other items reflecting purchases, ledgers or travel in furtherance of the trafficking in firearms and/or firearms parts and ammunition, including credit card receipts, airline tickets, hotel and restaurant receipts, canceled checks, maps, rental vehicle agreements, rental information and written directions to locations;

d.  Money ledgers, firearms distribution or customer lists, supplier lists, correspondences, notations, logs, receipts, journals, books, records and other documents noting the price, quantity, and/or times when firearms, firearms parts and firearm ammunition were obtained, transferred, sold, distributed, and/or concealed;

e.  Communications with potential customers regarding firearms, firearm parts, and ammunition, including advertisements of such items for sale.

f.  Communications with sources of firearms, firearm parts, and ammunitions.

g.  Indicia of ownership to include mail in the name Michael **AUSTIN**, court documents, identification cards, bank statements, rental agreements, rental vehicle agreements or the

like.

h.  Cash, jewelry or equipment derived from the sale of any controlled substances or firearms, including money counting machines, and records reflecting the possession, receipt, or transfer of funds.

i.  Mobile devices, including but not limited to the mobile device which utilizes the mobile phone number 315-601-8949 (**Subject Device**);

j.  Controlled substances, controlled substance distribution or customer lists, controlled substances supplier lists, correspondences, notations, logs, receipts, journals, books, records, receipts, and other documents reflecting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, possessed and/or concealed;

k.  Records reflecting travel in furtherance of the trafficking in controlled substances, including credit card receipts, airline, train, or bus tickets, hotel and restaurant receipts, canceled checks, maps, rental vehicle agreements and written directions to locations where controlled substances were stored, possessed, purchased, distributed or transported to or from;

l.  Paraphernalia for manufacturing, distributing, or storing controlled substances, to include but not limited to; drug packaging materials, cutting agents, drug packaging stamps, drug ledgers, drug customer/supplier lists, or addresses of persons who purchased, possessed, distributed controlled substances.

2.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

2

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

c.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

d.  evidence of the times the COMPUTER was used;

e.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

f.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

g.  records of or information about Internet Protocol addresses used by the COMPUTER;

h.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

i.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media

3

that can store data); any handmade form (such as writing); any mechanical form (such as printing

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives,

videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical,

or other high speed data processing devices performing logical, arithmetic, or storage functions,

including desktop computers, notebook computers, mobile phones, tablets, server computers, and

network hardware.

The term "storage medium" includes any physical object upon which computer data can

be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and

other magnetic or optical media.